Good morning. May it please the Court, my name is George Herides, appearing on behalf of the petitioner Gurjeet Kaur in her appeal from a final order rendered by the Board of Immigration Appeals. The Board summarily affirmed the immigration judge's decision pursuant to a streamlining authority and therefore this Court is reviewing the immigration judge's decision. In the present case, credibility is the threshold and indeed the sole issue on appeal here today. Petitioner Gurjeet Kaur testified in pertinent part that she was arrested twice in India and on the last occasion was during her detention on the occasion of her and beaten with a wooden stick and raped. The immigration judge, in denying the petitioner's claim for lack of credibility, relied on doubts she had concerning the petitioner's whereabouts subsequent to her departure from her village, where she went to hiding. In addition, the United States, as well as an alleged inconsistency about who consented to her marriage. Petitioner argues that none of these credibility concerns cited by the immigration judge go to the heart of the claim and asserts that they are not supported by substantial evidence and therefore the credibility finding of the immigration judge should be reversed. Let's take the first of those, the whereabouts of her hiding. As I remember from my notes, she at one time testified that she left after being beaten and raped because of her political position as being a Sikh and she stayed with relatives and was hidden. And then later she testified that she stayed in a hotel in New Delhi without any relatives, but her agent fed her every day. That goes somewhat, those two stories are contradictory. Why did it not go to the heart of the matter of political persecution? Well, it does concern testimony and details about, testimonial details about her flight from persecution. However, I would initially argue that there is no consistency about that aspect of her testimony. And even if there is an inconsistency, that it does not impugn the heart of her claim, which is the beatings, the rape and the custodial arrest she suffered while she was in her home. The question is whether she has fear of being beaten or raped again, whether she has fear of persecution, future persecution. That goes to future persecution, Your Honor. We're talking about what happened to her in terms of her past persecution. Well, but if she gives inconsistent stories about where she's hiding out, that raises the specter of maybe she's not hiding out at all. And if she's not hiding out at all, it's because she doesn't have any fear of persecution. And that casts some doubt of the heart of the matter. Is she being, did, was she persecuted? And is she about to be persecuted? Now, how do you deal with that? Well, Your Honor, I see the Court's point. But at the same time, how can we impugn the heart of a claim based on what she did after, after she left her home village? Judge Baez just explained why. But I'm trying to find out whether there's really, where the inconsistency notion came from. There was, where was the statement, the statement that she stayed with relatives was that general, right? It was simply I stayed with various relatives. Where was that statement made? That was in her asylum declaration, Your Honor. Was she also interviewed by, at the airport? No, she wasn't at the airport. She was found by a helicopter. Yes, Your Honor. She was attempting to enter the United States by crossing a field on foot. There were helicopters, at least one helicopter circling overhead. She went to the ground anticipating arrest by border officials that arrived subsequently. She testified that she was interviewed at the border and that she made various claims. She conceded that she testified that her family bought her plane ticket, and she made statements about her identification being stolen. And she did not disclose at that time her fear of returning to India. Now, Petitioner argues that all those statements were made to evade INS officials. They were made when she was at, in her, when her fear was at her utmost, her fear of returning to India. I mean, it is really difficult to say that somebody, that if we know somebody lies when it's to her advantage, it obviously is to her advantage to lie now, so why don't we think she's lying? I don't think she's lying in this case, Your Honor. Well, first of all, I must concede that I can't imagine any statement somebody can make under these circumstances at a border interview that would cast doubt on the heart of her claim. Now, I could, I concede that I might be wrong, but I'm, as standing here in front of you, I cannot conceive of anything she can say. But here we have a 20-year-old girl who was told by an agent to make certain statements. She's a 20-year-old girl. She's relying on this person. She's afraid of returning to India. She's simply trying to, to get into the United States to, to, to meet up with her, with acquaintances that can care for her. She makes statements wholly based on what she's been told to say. And then she files for, she announces her intent to file for asylum within 10 days of that interview. These are not the actions of somebody who did not, who did not have an intent to file, to flee India and, and, and not file for asylum in the United States. These are the actions of somebody who came to the United States with that intent from the beginning. Now, I also want to point to the fact that the government in their answering brief has, has already conceded that at least half of the credibility concerns cited by the IJ are very minimal, are minimal, Your Honor. So I would like to defer the rest of my time to them so that they can narrow the issues and, and explicitly say which factors they believe should be deleted. It seemed to me that they were placing most emphasis on the fact that when she came across the border, she didn't say that she feared going back to India. Yes, Your Honor. I, I, I would agree with that. But, so I would like to defer to them and, and reserve the rest of my time. Well, what is your answer to why that's not a, a, a, I mean, is that just subsumed in what you said earlier? Well, if we're going to, yes, Your Honor, if, if, if the Court is, will hold that, that the failure to, to raise a claim at the moment of entry under those circumstances cast doubt on, on any subsequent assertion of asylum, I, I would believe, I believe would be patently unfair. And to hold that would, would essentially hold that anybody who didn't raise the claim on the first entry would, would. And, and actually looking at, and we will give you more time, but the, the piece that I was concerned about is that there was also reliance, as I recall, on the fact that she said that the plane ticket was purchased by her parents who are still living in India, and that, but she also said that her father has been gone for a long time. But that statement is in a report of the, it's not a verbatim quote or anything. It's, it's in a report by the. I believe in her testimony, she said that she claimed that her family had bought the ticket, and then when the assertion was made, did you say that your parents bought the ticket? I believe she, she did, she may have, she conceded that she may have said that, but it's simply an innocuous statement. She, she did testify, it is innocuous because she testified explicitly that the only reason she said that her agent hadn't procured her ticket was because her agent had told her, asked her not to. So she figured instead of, so she decided to make a, at least partially true statement that it was her mother and her relatives that bought the ticket, but she may have said parents. But she did not make that statement for any other reason as, it's completely an innocuous statement. Okay. Thank you, Your Honor. We'll save the time. Thank you. May it please the Court, Stacey Young for the United States. The Petitioner's burden here is a high one. She must show not only that the evidence supports the finding that she is credible, but compels it. Because the immigration judge's adverse credibility determination is supported by specific cogent reasons that go to the heart of the Petitioner's asylum claim, she cannot meet this burden. Why don't you give us a list of those which you principally rely on as being specific cogent reasons for doubting credibility, because there are some that I think you've already agreed in your brief were not valid reasons. What are the valid reasons? Yes, Your Honor. Lead with your trump. Well, for example, Petitioner lied to the Border Patrol agent about what she was doing there. She only filed for asylum weeks after she married an asylee from India. She had an unpersuasive story as to why she'd be persecuted in India. She had an inconsistent story as to how she was given the asylum. Unpersuasive story as to why she was persecuted in India. Correct. She stated that she and her family were not supportive of militants, that she was supportive of a group called Akali Dalman, but that she wasn't a member and that it wasn't an illegal group or associated with any militant activity. With regard to her second arrest, which was really her principal claim of past persecution, she claimed that she was arrested simply because she was holding posters for an individual named Balakar Singh, but doesn't explain why this would have subjected her to persecution. And also, her relationship to Balakar Singh seemed very attenuated. She said that at one point he was like a brother to her, but immediately after, she said that she didn't know him very well. So it was unpersuasive, her story, as to how she was arrested in this instance. And like much of her other testimony was contradictory and confusing. In addition, going back to your question, Petitioner, there were inconsistencies with regard to the location of her father and inconsistencies. I mean, that only comes about if you parse language in translation very carefully, right? It's only if you say, because mother said our instead of my or because she said parents instead of my family, right? I mean, that's where you're getting this from. And when you're dealing in translation, to be dealing at such, you know, fine-cut questions of pronouns becomes a little questionable. Well, that may be the case, Your Honor, but she was given opportunities to explain these inconsistencies. And even her explanation of the inconsistencies were questionable. For example, she was asked to explain the inconsistency regarding whether it was her parents who bought the plane ticket or not. First she said that it was her travel agent who told her to say that it was her parents who purchased the plane ticket. And later she said, well, no, that's not true. Actually, parents mean my mother and relatives, not my mother and father. So even though these might seem like small inconsistencies, she was given opportunities to explain them, and even her explanations were inconsistent, which you're not. Well, I thought, reading your brief, and I gather your opposing counsel thought so, too, that your main inconsistency reliance was one you haven't mentioned yet, and that's the fact that she didn't check the box in her original act when she was originally caught coming over the border, that she feared going back to India. Correct. That was a substantial inconsistency. She was given an opportunity to check the box in her Notice of Rights form, which specifically said she feared persecution in India. Now, do we know that she was spoken to in her language at that point? She was, and she admitted that she was spoken to in Punjabi. She admitted that, and the INS officer at the border testified to that and signed a statement to that effect. And did he testify that he read her the whole thing, including that question? Yes. The interpreter did, correct. And she admitted in her Where is that in the record? Where is the form, Your Honor? No. Where is the fact that he read the entire statement to her in her language? It was actually on the form, and he signed to that. There was no testimony to that, correct. He didn't testify himself, but she actually did testify. She said that she understood what was said to her and read to her in her native Punjabi. And that's on page 129 of the record. And where is it on the form? On the form, which is on page 145. I thought it was on page 361. That's not the form. Oh, I see. It's different form. I see what you're saying. Okay. I'm just finding the form myself. I'm not sure I have that form. Okay. I'll have to look at it afterwards. Thanks. Michael Habib, the INS agent, signed at the bottom, and check the box notice read to subject by Michael Habib in Punjabi. I see. Is that on page 145? Correct, yes. You did, as Judge Beyer noted, suggest in your brief that some of the alleged discrepancies were fairly remote. I think that the brief suggested that some of the inconsistencies and unpersuasive testimony were more glaring.  But what the brief did was lay out all of the inconsistent inconsistencies and unpersuasive testimony, possibly noting that some were more egregious than others. You're not relying on her failure to know what U.P. means, are you? That's correct. What Petitioner testified was that she stayed with an aunt in U.P. and didn't know basic details about U.P. Having stayed there for three months, one would assume. Are you still relying on that? I'm sorry? Are you still relying on that? In part, we are relying on the fact that she was unable to have some to speculate about the degree of geographical instruction given people in the Punjabi. Well, Your Honor, the Petitioner didn't know basic facts about where she stayed for three months, that U.P. wasn't she didn't know that U.P. was a state. She didn't know what it stood for. She didn't know where it was. She said that according to her in hiding and not too interested in seeing the neighborhood. Well, she did spend 13 hours traveling to this place and, again, did spend three months there. And while this might not be the most glaring example of the inconsistencies and unpersuasive testimony in the record, it is one. And the immigration judge, I think, was reasonable to impart. There are people in San Francisco, I remember once taking some kids on a field trip and they thought we were going to the White House. It doesn't mean a whole lot to them, but this wasn't Washington, D.C. or anything like that. Right. The Petitioner's inability. Never been to the ocean. I'm sorry? Never been to the ocean, although they lived here. Yes. Well, the Petitioner's inability to know some basic trivia, again, was not the main reason the immigration judge found her to lack credibility. It was one of many, but one of six or seven principal reasons. But, again, not the main reason and certainly not the only one. Even if this reason were to be dismissed, there would be substantial evidence still remaining that more than supports the immigration judge's adverse credibility determination. Why did she say she didn't know this fellow very well as opposed to the fact that he was in hiding? Did she actually say I don't know him very well? She did on page 142 of the record. She said she didn't know him very well. In contrast to page 137 of the record where she said that Balakar Singh was like a brother to her. And this, again, relates to the primary example of past persecution Petitioner cites. And the fact that she can't even get her story straight with regards to her relationship to this individual who allegedly was responsible in some way for her being arrested and subsequently persecuted really casts some serious doubt on her credibility. What she actually said was because like he was my friend's brother, he was also like a brother to me. So essentially she was saying that because of that relationship he was like a brother to me. She wasn't saying that she knew him very well. On page 37? That's on page 80. 137, yeah. She says quite specifically because like he was my friend's brother, he was also like a brother to me. Well, at other points she does mention that she met him often at her school, that she knew him very well. She said later on 138 that he was our neighbor. Anyway, that doesn't seem very fruitful. Do you have anything else? Just in conclusion, Your Honor, the overwhelming the record overwhelmingly supports the conclusion that Petitioner's testimony was repeatedly and materially inconsistent and unpersuasive. Because this case does not present the compelling circumstances necessary to overturn the adverse credibility determination, the petition for review in this case should be denied. Thank you. Thank you very much. Thank you for your argument. It was useful. Your opponent's been pretty specific on a lot of these inconsistencies. What's your answer to her argument that she just made? Well, first, Your Honor, with all due respect to response counsel, I do not think we can invent new credibility concerns after the fact. We're confined to what the immigration judge said. So, for instance, the immigration judge did not find any fault with Petitioner's testimony regarding her arrests, her political activities, her associations with the Sharmani Akali Dal, and her activities on behalf of that party. Furthermore, to the extent that the immigration judge cited a concern between her and Petitioner's purported relationship and that of Bolkar Singh is only to the extent of where did Bolkar Singh reside. Did he reside in the village and was a neighbor? Or in contrast with her testimony when she said that he was in hiding and didn't live in the village. As far as the border interview is concerned, once again, we reiterate that under all the circumstances about the manner in which she entered the United States, her testimony at the interview is not only reasonable, but it would be unreasonable to believe that she would testify any other way. Did she affirmatively apply for asylum? Your Honor, she was placed in proceedings, so she would have filed defensively. However, she did announce her intent to file for asylum on April 25, 2002, which is 10 days after she was apprehended. And then she was released? Yes, Your Honor, on bond. Yes. And then at some point she married this guy who had also just gotten asylum. Yes, Your Honor. But she actually asserted the asylum before she met him. She announced her intent to file for asylum. Right. But I believe she may have married him in a traditional ceremony prior to filing the actual application to the immigration court. I understand. Counsel, let me see if I'm – if I've got the rule of law right. The question, it seems to me, is not whether her explanation upon entering the country was reasonable, as we might decide it to be, but whether the immigration officer in hearing the testimony and doubting her credibility had no basis whatsoever to do so. You're correct, Your Honor. And I would say that it's unreasonable for her to – for the immigration judge to arrive at that conclusion, given the fact of the manner in which she entered, the way she was apprehended, her age, what she had testified that her agent told her to say, and given the fact that she did apply for asylum within 10 days of being apprehended. Under all those circumstances, it would be patently unreasonable for the judge to question her testimony. And in this case, the petitioner's identity is not an issue. She testified that she lived in Sharanpur in hiding for three months. She did not leave Attar Pradesh in Sharanpur for those three months. And the only fault the immigration judge found with her testimony on that point was simply because she did not know what UP stood for. By virtue of the fact that she had a 12-year education and had lived in Sharanpur in three months, the judge found that to be unreasonable. But I would find it unreasonable for her to believe that a 20-year-old who was in three months in Attar Pradesh. Well, it's not a question of reasonability. It's a question of speculation as to what the Indian school system teaches us. Exactly. I'm sure that we can find plenty of 20-year-olds who take a look at the word CA and don't know it's California. Yes, Your Honor. And so that would be impermissible speculation on that point. And then by virtue of the fact that we have gone through five to six factors, and four of them have been ‑‑ four of them can either be construed as minor or not even inconsistencies at all or just mere speculation, all we have really is what the Honorable Judge Berzon has spoken about, what was said at the interview at the border. And so I beseech this Court on behalf of the Petitioner, based on the circumstances of her entry, to find that it was unreasonable for her to disclose her asylum claim at that point based on her reliance on her agent, her age, the manner in which she entered the United States. Did she ever give an explanation for why she didn't say that at that time? Yes, Your Honor. She said she was scared and that she was relying on the statements her agent made. Do you want to save your life? If you don't want to go back to India, you'll listen to me. You'll take my advice. But what was the advice? The advice was not to say that you were scared to go back to India? Yeah, to make statements to evade INS officials, and those were the statements she made. She said that she was not asked to disclose her asylum claim at that point, and there is no testimony on the record from the person who interviewed her. There's only a dry statement in the record saying that she was advised to disclose at that time. She said I was not. I did not. Her basic explanation was she didn't make any direct untruths. She just did not disclose the full truth is what her explanation was. Well, she did make some direct untruths. She said that her ID had first been stolen. Yeah, her ID. That she was spicing and stuff. But they would have asked her directly about what ID did she have. So anyway, thank you for your time. Thank you very much. That was a useful argument.
judges: Gibson, Berzon, Bea